Good morning, your honor. Good morning. I'm Ben Sharp with the Community Defender of the Eastern District of Tennessee. I represent the appellate, Mr. Ashmore. I respectfully request four minutes of rebuttal time. Fine. As the court is aware, we're here on two questions raised by Mr. Ashmore in this case. The first of those being, did the government violate a pretrial order? Prior to getting into our argument on that particular issue, the appellate would concede after further research and review that the standard of review would be plain error as to question one. I think in the brief that we had put that it would be de novo, but after further review we would concede that it is in fact plain error. But even at that standard. Plain error you're talking about applies to exactly what? Well, it would apply to the fact that the evidence given to by the case agent Jenkins in this matter was not consistent nor supported by previous testimony that he had given that was presented to the district court, our motion to dismiss after the return of the victim. Judge Jordan in this case held that the statements made to the officer immediately after the defendant got out of the car and before the warning held that that should be suppressed, but that the second post-Miranda statements should not be suppressed, right? That is correct, Your Honor. And you're saying that essentially that the second was the fruit of the poisonous tree, it was too close in time, et cetera, and they should have been suppressed even though there was no objection. Well, I guess there was an objection made at the suppression hearing. That's correct, Your Honor. And so you didn't need to make an objection at the time of the trial because you already lost that question. We had. That's the context here. That would be the context of the second question. The first question we would submit on plain error in that the testimony from Agent Jenkins that Mr. Ashmore made a statement of the specific caliber of the weapon being a .38 was made pre-Miranda warning, not post-Miranda warning. Okay, but in this case, there was no contention from the defendant that there was a basis for suppressing the weapon, correct? That's correct, and I believe what happened in that, Your Honor, was the fact that the magistrate judge made some mention as to inevitable discovery. We would feel that in a constructive possession case like we had in this particular instance, the fact that the weapon was found in the location where it was found, it was not in plain view, it was under the seat in the driver's side, that the highest and best evidence that the government had were the statements by Mr. Ashmore. Well, even assuming that there was plain error in failure to suppress the statement and or allowing the statement into the trial impermissibly, since the gun was not suppressed, what's the prejudice to your client here? I would say that the prejudice is extreme to our client in that you are dealing with a constructive possession case, not an actual possession case. You have a passenger in a vehicle that is not his own with a firearm found in that vehicle that was not in plain view. And he was acquitted of the first charge and the first gun, right? He was, yes. There were two guns in the first charge and then in the second charge there was only one firearm, but he was acquitted on the first charge, yes. So you are conceding then that there would be inevitable discovery of the firearm? I believe there would have been a very valid arrest warrant. There would have been an inventory of the vehicle. Why, if he was not the owner or driver, why would there be an inventory of the vehicle? Well, I would imagine the fact that they took the driver of the vehicle, Misty Hutchins, they took her into custody as well. Now, whether she... Did they take her into custody permanently? I mean, in the long term? I don't know if she was charged. Or was she just seized at the time of the stop? She may have only been seized at the time of the stop. I don't know if there were ever state charges brought against her. I know no federal charges were ever brought against her. Yeah, but I'm just curious, why are you making that concession? Well, I guess, Your Honor, in all due respect to that particular issue, our position would be that had the gun obviously never been found, then there would never have been a second charge. That's clear. Had the gun... Even if the gun had been discovered, we believe that we would have been successful at trial based on the fact that it is a constructive possession case, not an actual possession case. There's lots of case law about items being found in cars that have not been held accountable to certain passengers. But it would be a jury question? It would be a jury question. So there was no consent to look into... I thought there had been consent by the defendant to look for a weapon or to look into the car. There was a consent. Yes, consent was voluntary and not a problem. It was. We did not argue that the consent to search was a violation. Well, it would have been discovered if the officers had consent and they looked for it, which they did. So that's another reason that you might concede? It would be, Your Honor. When was the consent given? The consent was given after the initial question from Agent Jenkins. So Agent Jenkins, without giving Miranda warning, says to the defendant, do you have any weapons in the car? And the defendant says yes. And then consent to search is acquired. Yeah. And that question was... You have to forgive me, Your Honor. I don't recall the officer's name, but he was a state officer that was involved with the issue that you're raising in this appeal. What is your analysis of the impact of Elstadt and Siebert cases from the Supreme Court? How do they assist in the analysis here? Well, I think Siebert actually... And I know the government has attempted to make a distinguish between Siebert and what we're dealing with now. But if you look at the actual elements of Siebert, what we deal with is the completeness and the detail involved in the first round of questioning. And I think you have to review the actual charge. And in this particular charge, when you're dealing with a felon in possession of a firearm, the biggest and most incriminating statement in question is, are you in possession of a firearm? And that, essentially, the answer to that, if it is incriminating, is the element of the offense. The other elements of that offense are, have you been convicted of felon? That can be proven through documents. And did the firearm affect interstate commerce? And that can be proven by where the gun was manufactured. So when you're looking at this specific charge, the completeness of the questioning is, were you in possession of a firearm? You get the incriminating statement. That is a very complete confession in this type of case. Specifically, when you look at the fact that Agent Jenkins' prior statements as to what was said pre-Miranda was much more detailed than what he testified to at trial. So you're bringing up the prior statements. Are the prior statements of Agent Jenkins in our record? They are in the record in that the government relied to the notes that were provided in discovery. So when you say the notes, did the government produce the notes and put them in the district court record? Or did you put them, were you the trial counsel? I was second chair. So did your side put the notes in the record of the district court? They are not in the district court record. They were addressed on direct examination. They were addressed on redirect examination. They were addressed in the reply brief. But no, they were not put into. And similarly, I know there are references to the agent's grand jury testimony. Did you, were those put in the record? No. That was not placed in the record either. But those, the transcript of the grand jury testimony is something that your side saw? Yes. And in the testimony from the grand jury, it clearly shows in chronological order that the statements that Mr. Ashmore made in reference to the caliber of the weapon being the .38 were made pre-Miranda, not post-Miranda. And they mirror Agent Jenkins' notes. And in addition, we had the suppression hearing in which point Agent Jenkins made no reference to the caliber of the weapon, even though he had been sworn in to tell the truth, the whole truth, and nothing but the truth. Does the record reflect whether your side had access to those two We would have certainly have had reference to the notes, not the grand jury testimony, prior to suppression. Counsel, the unusual, for me, one of the unusual things about this case is that the response pre-Miranda to the question goes both to the potential guilt of the defendant and to the safety of the officer. The officer, I think most officers are very concerned when they first arrest someone, first and foremost about their own safety, because so many officers get injured and killed at that point in time. And here the question is, do you have a weapon in the car? Of course, the officer was entitled to pat him down to look for a weapon, but he asked the question, do you have a weapon or something dangerous in the car? That question obviously goes to the officer's safety in part, and it also, with respect to the gun, goes to the defendant's guilt. And I haven't seen a case in which you have both of those things present. I would agree with that, your honor. You haven't seen one either. I have not. The only thing that I would say in regard to officers, and I see my time is up, may I respond? Please, yes. Thank you. The only thing that I would say in reference to officer safety is that this was a well-planned and executed felony arrest stop. They had over 15 officers there, SWAT team. Mr. Ashmore was on the ground, handcuffed behind his back. They were frightened. They were afraid this man was thought to be dangerous, obviously. I would say that that's true, but I would say that at the point that he was actually questioned, that there was zero threat, and there would not have been any excuse to question him without Miranda warnings under those circumstances where he is handcuffed behind his back, laying on the ground. I think he was initially on the ground, and maybe they stood him up. He was handcuffed when he was asked the first set of questions. He was, yes, handcuffed behind his back. Clearly, he was seized or arrested at that point. And had he been a threat, he clearly was not a threat at the point that the question was asked. Thank you. May it please the Court. Suzanne Kearney-Cullen for the United States. The defendant's conviction in this case should be affirmed because the record establishes that the United States did not violate the court's suppression order because only the defendant's post-Miranda statements were admitted at trial. The defendant failed to timely object to the admission of his statement and thus for review. When you say they waived it, don't we review for plain error? For plain error, Your Honor, that is correct. However, this court has only applied the waiver rule in situations that are exceptional circumstances where the error is so egregious that failure to permit the appellate review would work a miscarriage of justice. Well, why isn't the whole set of questions post-Miranda a violation of Elstad and Siebert? Your Honor, we believe that the cases of Elstad and Siebert are distinguishable from the facts in this case. In the Elstad case, the Supreme Court established a general rule that if a statement is voluntary, if the defendant is questioned first and warned later, then that is permissible if the question is voluntary. Siebert expanded the ruling in Elstad to establish that there are five factors that should be examined to determine whether or not... By plurality. By plurality, that's correct. But our position would be that either under the plurality decision that there were five factors to consider or under Justice Kennedy's analysis that there are two factors to consider that under either situation, our case is still distinguishable. With regards to the facts in Siebert, the defendant in Siebert was subjected to a 30 to 40 minute interrogation that was exhaustive and systematic. The defendant had been taken back to the police department and it was a deliberate and intentional delay of Miranda in order to elicit a confession. After the confession was elicited, the defendant was then Mirandized after a short break and then asked the same questions and gave the same confession. In our case, after the defendant was taken into custody and handcuffed, he was not on the ground. He was standing up at the rear of a police car handcuffed. He was asked a single question. He was asked whether or not there was anything dangerous on person in his vehicle or whether he had a firearm on his person or in the vehicle. Particularly ask on your person as well as in the vehicle. That is correct. And clearly he was under arrest at that time. He absolutely was. And his response was that there might be a revolver in the vehicle that belonged to his wife. So he was only asked that one question. Then after the vehicle was searched, he was Mirandized by the officer and asked in more detail about the weapon. And at that point... Were the questions after the Miranda warning different than the questions before the Miranda warning? The question before Miranda was, is there anything on your person or in the vehicle that might be dangerous or do you have a firearm on your person or in the vehicle? After Miranda, the defendant was asked specifically about the weapon. And the defendant was not advised as to what type of weapon it was, what the caliber of the weapon was or where it was located. And at that point, the defendant stated that the firearm in the car was a .38, that it was loaded, that it belonged to his wife and that he was a convicted felon and he knew he could not possess firearms. So the United States believes that the facts in this case are clearly distinguishable from the facts that are encountered in the Siebert case. Because the questions were different after Miranda? Correct. And because it happened very close in time? Correct. And it was not an intentional and deliberate delay of Miranda as in the Siebert case. In Siebert... Why couldn't one have a different viewpoint of that? That if he was under arrest, there was no reason not to give him Miranda warnings? Your Honor, we would agree that the defendant in the perfect world should have been Mirandized immediately. However, as Judge Merritt alluded to a little earlier, this was a very volatile situation. It was a very serious situation in which the officers took their safety as utmost concern. But isn't it also clear that in this case, this was not just a random traffic stop. This was a arrest and served as an arrest warrant on Mr. Siebert. So everybody involved knew what the endgame was at the time this process began. So in that case, how do you explain or justify the Miranda warnings not being done immediately? Because everybody knew that the goal was to arrest him. And absolutely, Your Honor. The Miranda warnings, as I said, in a perfect world should have been given immediately. However, it was a very serious situation. It was a defendant who the officers had a concern about their safety. And that is why they chose this manner in which to execute a felony arrest warrant. But their concern about their safety at best would be that he had a weapon on him because he was handcuffed and surrounded by 15 SWAT team people. And the only other person with him was the woman who was driving the car. And she had been detained as well, right? She was out of the car and detained. That's correct, Your Honor. And that's why the district court and the magistrate judge rejected the argument that there was a public safety exception for the first question and suppressed the first statement with regards to whether or not there was a firearm in the vehicle. Now, your opponent referred to notes from Officer Jenkins and to grand jury testimony of Officer Jenkins. Are those in the record? Those are not in the record. There was a question during the trial directed to Agent Jenkins as to whether or not he took contemporaneous notes about the defendant's statement after he was mirandized. At that point, Agent Jenkins said he did take contemporaneous notes of the statements. Defense counsel at trial after that question was asked did not ask any questions on redirect, or excuse me, on recross at that point about whether or not he had been provided the notes. But as elicited in Agent Jenkins' testimony, those notes had been previously provided pursuant to discovery to defense counsel, as well as Agent Jenkins' report of investigation, which defense counsel has referenced in the reply brief. All of those materials had been previously provided. And when were they provided? Before or after the suppression hearing? They were provided prior to the suppression hearing. So a question that my understanding from reading the briefs and all the materials in this case is that I can't remember which brief it is, but it has a transcript of both the notes and the grand jury testimony. It's your opponent's, one of your opponent's briefs, is that right? So should we be able to look at the language there, which seems to contradict your position? Well, Your Honor, our position would be that if the appellant had felt that those notes were they would have objected at trial and would have requested that those items be added into the record. Again, as you point out, in a perfect world that would have happened, but it didn't happen here. But it would appear from reading these transcripts, which I did read, that Jenkins got the information of the .38 caliber at the first interaction with Ashmore as opposed to at the second interaction, at the pre-Miranda interaction. Isn't that a fair reading of these two transcripts? It could be read that way, correct. Well, how else could it be read? Your Honor, we believe it's possible that the defendant could have made the statement that there was a .38 in the vehicle, both pre- and post-Miranda. And if it is just the .38 statement that it was the caliber of the weapon, if it's the only offending statement, even without that, the defendant still had made a number of inculpatory statements post-Miranda that we believe still would go towards his guilt and still would have been sufficient for a jury to make a factual finding that the defendant was guilty based upon the other post-Miranda statements. So even absent the part about the caliber of the weapon, we believe that the evidence would have been sufficient to sustain his conviction. Your argument is that there should have been an objection made at the trial. That's correct, Your Honor. And if the objection was not made, that you apply a plain error doctrine. But the judge had already ruled that he would not suppress these post-Miranda statements. He had already made a ruling on that at the suppression hearing? In his supplemental report and recommendations. So why should the lawyer for the defendant have made an objection? Why was he required to make an objection at the trial when the district court had already ruled? I think, as I understand what you're saying, had already ruled at the suppression hearing that an objection should have been made just for formality purposes? No, Your Honor. The defendant alleges in his motion to dismiss and also in his brief that they were surprised that the United States violated the suppression order by attempting to admit a pre-Miranda statement. So if the defendant truly believed that we were attempting to admit a pre-Miranda statement in violation of the court suppression order, the appropriate remedy or the appropriate thing to do would have been to object so that the trial court could have fixed whatever problem that they were alleging in that they alleged that we violated the suppression order. In reading their brief and their motion to dismiss, their position is that we violated the suppression order. So since they believe that we violated the suppression order, they should have. By a government counsel asking questions about the pre-Miranda statement? Correct. Correct. Their allegation is that we violated the suppression order by eliciting responses and questions and answers about the pre-Miranda statement. Your answer to that is? We did not violate the suppression order and if they truly believed, they stated in their brief that they were surprised at our line of questioning and surprised at the answer, then they should have objected so that the district court could have the opportunity to fix the problem. They did not even identify that there was any violation of the suppression order until now. So we believe that they have waived the right for review of that as they did not comply with FRCP 103, which does require contemporaneous objection or motion to strike the evidence in order to preserve that issue for appeal. As to the post-Miranda statements, there was no objection made, I take it. The judge had already ruled on that, so there was no error in the judge allowing that to come in except one that would be in plain error would apply to that. Correct, Your Honor. That is our position. Your Honor, we do not believe that the district court plainly erred by admitting the defendant's post-Miranda statements. As I previously stated, we do believe that this case is distinguishable from the Siebert case. We do not believe that there was any violation of the court's suppression order and for that reason, we would respectfully request that this court affirm the defendant's findings that the United States did not violate the suppression order. Thank you very much. Your Honor, just so I'm clear on the appellate's position, the plain error would go to just the fact that the government violated the pretrial order, not to the Miranda issue, which we felt that we did properly preserve. We objected to the... What way violated the suppression hearing order because they went into the pre-Miranda statements? That's what you're saying and she says they didn't. Your Honor, I think it's clear and it is not a charge I make lightly. However, I think that the evidence is overwhelming that the officer manipulated the sequence of events in order to get in the statement that the .38 was post-Miranda. Everything else supports the fact that he made the .38 caliber statement prior. Let me ask you this question. If there was consent to search the car and they immediately found the weapon and within reach or close reach or something of the defendant when he was in the car, why isn't this harmless error? It's not harmless error, Your Honor, because the highest and best evidence against Mr. Ashmore were his own words. This gun being in the vehicle, it was placed in an illogical place for him to constructively possess it. It would have been very difficult for him to reach that weapon. Our whole trial strategy would have been considerably different. We felt like we would have been successful had we been able to keep the statements that came in that violated Miranda, in our opinion, out. I thought the weapon was under the driver's seat. It wasn't. And he's sitting in the passenger seat. That's correct. Is it under the driver's seat in a fashion such that you would reach it from the front or you would reach it from the back of the seat? Well, there's some dispute on that as well, Your Honor. The evidence from the government witnesses would have been that you could have reached the firearm by reaching behind the seat. Our position would have been difficult to reach from the passenger side. Obviously the government's position was that it would be easier to get to from the passenger side. However, it would have been a jury question where we would have had that issue without the additional incriminating statements that we felt were in violation of Miranda. It would have been a completely different trial strategy that we would have used. Had he previously been convicted of being a felon in possession? Your Honor, I would have to go back and check his list. I don't believe that he had been previously convicted of felon in possession of a firearm. I would have to go back though and check his criminal history. I know he had prior felony convictions. Something in the record that the I don't know what that's based on. He does have a violent criminal history, Your Honor. Well, he was arrested on October 7th? He was found on October 7th in the possession of guns? Of two firearms, yes. Was he arrested on October 7th? He was arrested on October 7th. I could not understand why he was acquitted of the October 7th charge. I would say that we did a nice job trial, Your Honor. I'm sure he got confused as to what happened. Your Honor, we felt that the October 7th case was a stronger case for the government. We thought that the October 20th case was a stronger case for us. He had the key to the lockbox that contained the guns on his belt. Yeah, we definitely felt the October 7th case was stronger for the government than the October 20th. What was his sentence? 240 months. 20 years. 20 years. That's based on career criminal? Yeah, armed career criminal, yes, Your Honor. And Your Honor, I'm almost out of time. I would just like to address how it is similar to Siebert real quick. I know I kind of touched on it before and I didn't finish it before we were allowed. Please, thank you. Your Honor, when we look at those elements again, and again I really think it's important you look at the actual charge and how short the completeness of the question needs to be on felony possession of a firearm. Then you look at the overlapping content of the statement made before and after. The content is almost identical from the first statement to the second statement. And Mr. Ashmore would have had no idea at that time that his pre-Miranda warning statements would not be admissible. So giving him Miranda at that point would have had almost zero effect on him as to whether or not he was aware that his other statements would not be allowed in. You look at the timing and the setting, they're almost contemporaneous. It's the continuity of police, it's Agent Jenkins both times. And you look at the first round, it's continuous to the second round and again, it goes to almost the contemporaneous. Questioning gives the statements. Miranda gives the same statements. Thank you. Thank you. Thank you. Are you court appointed or are you hired on? I'm with the Assistant Federal Defender, Your Honor, for the Eastern District of Tennessee. Really good job in briefing, helping us in this case. Thank you, Your Honor, I appreciate it. Thank you. Thank you both for the argument. The case will be submitted and would the clerk recess court please.